**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROY LEE WILLIAMS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, | : | |
| | : | |
| Defendant. | : | NO. 21-1248 |

## ORDER

AND NOW, this ___ day of _____, 2022, upon consideration of

the Defendant's Motion for Summary Judgment, it is ORDERED and DECREED that the

Motion is GRANTED. Judgment is entered in favor of Defendant Wetzel on all claims.


BY THE COURT:


_____

Robreno, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROY LEE WILLIAMS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, | : | |
| | : | |
| Defendant. | : | NO. 21-1248 |

**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Defendant John Wetzel, Secretary of the Pennsylvania Department of Corrections, by and

through counsel, for the reasons set forth in the attached Memorandum of Law, hereby moves for

summary judgment pursuant to Federal Rule of Civil Procedure 56.

Dated: January 31, 2022                    Respectfully submitted,

                                           JOSH SHAPIRO
                                           Attorney General

COMMONWEALTH OF PENNSYLVANIA      BY: /s/ Kathy A. Le
OFFICE OF ATTORNEY GENERAL        KATHY A. LE (Pa. No. 315677)
The Phoenix Building              Deputy Attorney General
1600 Arch St., 3rd Floor
Philadelphia, PA 19103
Telephone:  (215) 560-2141        KAREN M. ROMANO
Fax:  (717) 772-4526              Chief Deputy Attorney General
kle@attorneygeneral.gov           Civil Litigation Section

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROY LEE WILLIAMS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, | : | |
| | : | |
| Defendant. | : | NO. 21-1248 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant John Wetzel, Secretary of the Pennsylvania Department of Corrections

("DOC"), by and through counsel, respectfully submits this Memorandum of Law in Support of

his Motion for Summary Judgment.

**I.     INTRODUCTION**

Plaintiff, a current capital case inmate in custody with the Pennsylvania Department of

Corrections ("DOC"), brings this lawsuit in regards to the restrictive conditions he lived under

for over twenty years on the Capital Case Housing Unit. *See* Compl. (ECF No. 2). Plaintiff

brings suit against DOC Secretary John Wetzel, in his individual capacity, under 42 U.S.C. §

1983, for violations of the Eighth and Fourteenth Amendments. *See id.*, Count I. He also brings

suit against Secretary Wetzel, in his official capacity,[1] for violations of Title II of the Americans

with Disabilities Act, 42 U.S.C. §§ 12131, *et seq.*

Pursuant to the Court's Order, Defendant deposed Plaintiff, and now brings this motion

for summary judgment. *See* ECF No. 14.) Based on the undisputed material facts, Defendant is

entitled to judgment on all claims.

---

[1] Pursuant to the Court's Order, dated April 1, 2021, Plaintiff's claim under Title II of the Americans with Disabilities Act is deemed to be a claim against the Pennsylvania Department of Corrections. *See* ECF No. 7, at ¶ 6.

*First*, as a threshold matter, all claims against Defendant should be dismissed because Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA").

*Second*, Plaintiff's claims were not timely filed and thus all claims are barred by the statute of limitations.

*Third*, Defendant is entitled to judgment in his favor on the Section 1983 claims for violations of the Eighth and Fourteenth Amendments because, as a matter of law, he is protected by qualified immunity.

*Fourth*, Defendant is entitled to judgment in his favor on the Section 1983 claim for violation of the Fourteenth Amendment because Plaintiff has no liberty interest and in any event Defendant is entitled to qualified immunity.

*Fifth*, Defendant is entitled to judgment in his favor on the ADA claim because the undisputed record shows that Defendant had no knowledge of Plaintiff's alleged disability and did not intentionally discriminate against him on that basis.

For the foregoing reasons, Defendant is entitled to summary judgment on all claims.

## II.    FACTUAL BACKGROUND

In accordance with this Court's procedures, the factual background of this case is set forth in Defendant's Statement of Undisputed Material Facts ("Def's SMF"), which has been filed contemporaneously herewith, and incorporated as if fully set forth herein.

## III.    LEGAL STANDARD

The summary judgment standard is well established. A party is entitled to summary judgment if it can show "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-

2

moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A movant that will not

bear the burden of proof on an issue at trial satisfies its initial responsibility on summary

judgment by "'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986). In that situation, a movant is entitled to summary judgment if the nonmoving party fails

to rebut by making a factual showing "sufficient to establish the existence of an element essential

to that party's case." *Id.* at 322. This factual showing must be based on evidence in the factual

record and not on conjecture or speculation. *Wharton v. Danberg*, 854 F.3d 234, 244-45 (3d Cir.

2017); *see also* Fed. R. Civ. P. 56(c) (evidence must be admissible to be considered at summary

judgment). But in deciding whether the movant is entitled to judgment as a matter of law, the

Court must view all admissible evidence in the record in the light most favorable to the

nonmoving party. *Anderson*, 477 U.S. at 255.

A non-moving party may not "rest upon mere allegations, general denials or ... vague

statements... ." *Trap Rock Industries, Inc. v. Local 825, Intern. Union of Operating Engineers,

AFL-CIO*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500

(3rd Cir.), *cert. denied*, 502 U.S. 940 (1991)). Conclusory statements are not facts and cannot

create issues of fact. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 889 (1990).

Furthermore, the party opposing summary judgment "must do more than simply show that there

is some metaphysical doubt to the material facts." *Matsushita Indus. Elec. Co., Ltd. v. Zenith

Radio Corp.*, 475 U.S. 574, 586 (1986). The mere existence of an alternate version is not grounds

for denial of summary judgment. *Saucier v. Katz*, 533 U.S. 194, 212 n.3 (2001), *overruled on

other grounds* by *Pearson v. Callahan*, 129 S.Ct. 808 (2009) ("[d]isputed versions of the facts

alone are not enough to warrant denial of summary judgment") (quoting *Rowland v. Perry*, 41

3

F.3d 167, 174 (4th Cir. 1994)). If the non-moving party's evidence "is merely colorable, …or is not significantly probative, ... summary judgment may be granted." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

A defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). While a complaint need only contain a "short and plain statement" of the facts, *see* Fed. R. Civ. P. 8(a), it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Assessing a complaint's sufficiency is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). While a court must accept well-pled facts as true, "that admonition does not demand that the Court ignore or discount reality." *Jones v. DeNotaris*, 80 F. Supp. 3d 588, 593 (E.D. Pa. 2015).

## IV.   ARGUMENT

### A.   All Claims Against Defendant Should be Dismissed Because Plaintiff Failed to Exhaust Administrative Remedies

Plaintiff is currently a prisoner with the Pennsylvania Department of Corrections, and as such is required to exhaust available administrative remedies in accordance with the Prison Litigation Reform Act before bringing a lawsuit. The facts of record show that Plaintiff failed to

exhaust available administrative remedies, and thus, as a matter of law, all claims against
Defendant are barred and judgment must be entered in his favor.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (a), provides:

No action shall be brought with respect to prison conditions under section 1983 of
this title, or any other Federal law, by a prisoner confined in any jail, prison, or
other correctional facility until such administrative remedies as are available are
exhausted.

The "exhaustion requirement applies to all inmate suits about prison life, whether they
involve general circumstances or particular episodes, and whether they allege excessive force or
some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Suits under § 1983 are included
in the term of "prison conditions" and require the inmate to exhaust all administrative remedies.
*Jackson v. Taylor*, No. 11-4616, 2012 WL 826895, at *1 (3d Cir. Mar. 13, 2012); *Nickens v.
Department of Corrections*, 277 Fed. Appx. 148, 150, 2008 WL 2018435, at *2 (3d Cir. 2008).

Similarly, claims alleging violations of Title II of the ADA have also been included under
the PLRA's exhaustion requirements. *See Cobb v. Weyandt*, 359 F. App'x 285, 287 (3d Cir.
2009) ("Cobb argued that administrative exhaustion was unnecessary for claims raised under the
ADA—an argument the District Court properly rejected."); *O'Guinn v. Lovelock Corr. Ctr.*, 502
F.3d 1056, 1060–61 (9th Cir.2007) (holding that the PLRA requires exhaustion of administrative
remedies before an action may be brought under any federal law, including the ADA and
Rehabilitation Act). *See also, e.g.*, *Talley v. Clark, et al.*, C.A. No. 18-5316, 2019 WL 3714509,
at *3 (E.D. Pa. Aug. 7, 2019) ("Before filing suit involving prison life under any federal law,
including the ADA and the Rehabilitation Act, a prisoner must exhaust all available
administrative remedies."), *reversed and remanded on other grounds by Talley v. Clark*, 851
Fed. Appx. 306 (3d Cir. 2021); *Talley v. Pillai*, No. 2:18-cv-1060, 2019 WL 6701346, at *5
(W.D. Pa. Dec. 9, 2019) ("Before filing suit challenging prison life under any federal law,

5

including the ADA, a prisoner must exhaust all available remedies."); *Owens v. DelBalso*, No. 4:17-CV-1657, 2018 WL 4069092, at *4 (M.D. Pa. Aug. 27, 2018) (granting summary judgment to defendants after finding that inmate failed to exhaust his ADA claims).

Pursuant to § 1997e (a), the exhaustion of available administrative remedies is mandatory. *Porter*, 534 U.S. at 532; *Woodford v. Ngo*, 126 S.Ct. 2378 (2006), citing *Booth v. Churner*, 532 U.S. 731, 739-741 (2001). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). The prisoner must properly and fully exhaust. *Woodford*, 126 S.Ct. at 2386-87. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules…" *Id.* at 2386. The prisoner must complete the administrative review process in accordance with the applicable procedural rules. *Id.* at 2386-88. *See also Nyhuis*, 204 F.3d at 77, 78. If the inmate's grievance or appeal is dismissed due to procedural defects, such as untimeliness or failure to adhere to requisite administrative procedures, he has not exhausted his administrative remedies for purposes of the PLRA. *Woodford*, 126 S.Ct. at 2387-88. Furthermore, a prisoner must pursue his claim to the highest level of the administrative process before filing suit. *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000). "If a prisoner does not exhaust available administrative remedies, the claims should be dismissed." *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1998).

The Pennsylvania Department of Corrections provides a detailed policy, DC-ADM 804, which sets forth specific instructions for initiating a prisoner grievance and pursuing it through the administrative process. *See Booth*, 206 F. 3d at 292 n.2. The Grievance Policy provides for three stages of review:  (1) Initial Review addresses the inmate's filed grievance; (2) the first

appeal from the Initial Review, known as Appeal to Facility Manager; and (3) a second and final appeal to the Secretary's Office of Inmate Grievances and Appeals, known as Appeal to Final Review. *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004).

The exhaustion requirement in the PLRA includes a procedural default component. *Spruill*, 372 F.3d at 230. In other words, the PLRA requires more than simple exhaustion, i.e., more than that there is no further process available to the inmate within the grievance system. *Id.* at 227-231. The PLRA requires that an inmate complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Spruill*, 372 F.3d at 228, 231. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules…" *Woodford*, 126 S.Ct. at 2386. If the inmate's grievance or appeal is dismissed due to procedural defects, such as untimeliness or failure to adhere to requisite administrative procedures, he has not exhausted his administrative remedies for purposes of the PLRA. *Woodford*, 126 S.Ct. at 2387-88. Where the inmate fails to completely exhaust his administrative prison remedies, he cannot proceed with an action in federal court. *Nickens*, 277 Fed. Appx. at 151.

In the case at bar, Plaintiff failed to exhaust the administrative remedies available to him. Plaintiff filed three grievances related to the issues he presents in the instant matter. *See* Def's SMF ¶¶ 46-49. But Plaintiff did not comply with DOC's grievance policy, DC-ADM 804, in multiple ways. First, none of the grievances were filed within the time period for filing a grievance set forth in the Department's grievance policy. Plaintiff filed the earliest grievance on November 13, 2020. *See id.* ¶ 47. DOC's grievance policy requires an inmate to file a grievance within fifteen days after the event upon which the claim is based. *See id.* ¶ 51. Plaintiff's claims

are based entirely on the restrictive, isolated conditions he experienced in the Capital Case Housing Unit ("CCU") before the conditions on the unit were relaxed. *See id.* ¶ 16. The record shows that those conditions were significantly relaxed beginning on March 12, 2018. *See id.* ¶¶ 12(a)-(e). Thus, the latest date by which Plaintiff would have been able to file a grievance per DOC's grievance policy would have been March 27, 2018. Plaintiff avers that the critical date is December 10, 2019, the effective date of the final policy statement setting forth the new less restrictive CCU conditions. *See id.* ¶ 9, 15. Although significant changes to the conditions had started on March 12, 2018, even relying on Plaintiff's date of December 10, 2019, the latest date for him to file a grievance in accordance with DOC's grievance policy would have been December 25, 2019. Plaintiff did not file his first grievance until eleven months later on November 13, 2020. This does not comply with DOC's grievance policy.

Second, even if Plaintiff had timely filed any of his grievances initially, Plaintiff failed to exhaust administrative remedies because he failed to properly file a final appeal to the Secretary's Office of Inmate Grievance and Appeals ("SOIGA") for any of them. The first and third grievances—Nos. 898857 and 916331—were not properly appealed to SOIGA because he did submit the necessary documents required under DOC's grievance policy. *See* Def's SMF ¶¶ 55, 57. The second grievance—No. 902000—was not properly appealed to SOIGA because Plaintiff did not file it within the fifteen-day deadline set in DOC's grievance policy. *See id.* ¶ 56. Although it appears that he attempted to file an appeal for each grievance, he did not properly do so under the grievance policy rules. Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules…" *Woodford*, 126 S.Ct. at 2386. Thus, Plaintiff did not complete the required final appeal to SOIGA for any of his three grievances and so did not properly exhaust his administrative remedies.

8

Given the facts of record, Plaintiff cannot establish that he satisfied the PLRA's requirement to exhaust administrative remedies, which is a prerequisite to bringing a civil lawsuit. Thus, the Court should dismiss all claims against Defendant.

**B.      The Court Should Dismiss All Claims Against Defendant Because They Are Barred By The Statute Of Limitations**

Claims brought under Section 1983 and Title II of the ADA are both subject to a two year statute of limitations.

Because § 1983 does not itself contain a statute of limitations, "federal courts must look to the statute of limitations governing analogous state causes of action." *Urritia v. Harrisburg County Police Department*, 91 F.3d 451, 457 n.9 (3d Cir. 1996). *See also Sameric Corp. of Delaware v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). In determining which state limitations period to use in federal civil rights cases, we look to the general, residual statute of limitations for personal injury actions. *See Owens v. Okure*, 488 U.S. 235, 249-250 (1989); Wilson v. Garcia, 471 U.S. 261, 276-80 (1985). The same is true for claims brought under Title II of the ADA. *See Hall v. Minner*, 411 Fed. App'x 443, 445 (3d Cir. 2011) ("The statute of limitations applicable to claims under Title II of the ADA…is the statue of limitations for personal injury actions in the state in which the trial court sits.").

Thus, for both Section 1983 and ADA claims originating in Pennsylvania, courts look to 42 Pa. C.S. § 5524, which provides that the statute of limitations for a personal injury action is two years. *See Getchey v. County of Northumberland*, 120 Fed. Appx. 895, 897-98, 2005 WL 22871 at *1-2 (3d Cir. 2005); *Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000) (applying the Pennsylvania two-year statute of limitations to a claim alleging violation of plaintiff's federal civil rights); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1989); *Knoll v. Springfield Township School District*, 763 F.2d 584 (3d Cir. 1985).

9

Although the statute of limitations in these cases is determined by Pennsylvania's two-year statute for personal injuries, the accrual date "is a question for federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). As a general rule, a cause of action accrues when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. *Chardon v. Fernandez*, 454 U.S. 6 (1981); *Sameric Corp. of Delaware, Inc.*, 142 F.3d at 599; *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991); *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982).

In the present case, Plaintiff raises the continuing violations doctrine to toll the limitations period. The continuing violations doctrine is an "equitable exception to the timely filing requirement." *Cowell v. Palmer Tp.*, 263 F.3d 286, 292 (3d Cir. 2001). Thus, "when defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *See id.*, citing *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991). To prevail on a continuing violation theory "the plaintiff must show more than the occurrence of isolated or sporadic acts...." *Jewett v. Int'l Tel. and Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981). A "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982) (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)), *abrogated on other grounds by Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997). "Under this doctrine, a plaintiff can sue for actions that occurred outside the applicable limitations period if a defendant's conduct is part of a continuing practice [and] ... the last act evidencing the continuing

10

practice falls within the limitations period." *Cibula v. Fox*, 570 Fed. Appx. 129, 135 (3d Cir. 2014) (internal quotation marks and citation omitted).

In the instant case, Plaintiff contends the Department violated his rights under the ADA, the 8th Amendment, and the 14th Amendment, by confining him on the CCU for roughly twenty-five years in harsh conditions equivalent to solitary confinement due to his mental health disability. *See Compl.* Plaintiff has been a capital case inmate in DOC custody since approximately 1993 through the present. *See* Def's SMF ¶ 3. On January 25, 2018, a class action lawsuit was filed, in the United States District Court for the Middle District of Pennsylvania, on behalf of all capital case inmates, alleging that the restrictive, solitary conditions of the CCU violated the rights of those inmates. *See id.,* ¶ 6. On November 18, 2019, the Department and class counsel executed a settlement agreement wherein the Department agreed to loosen the restrictive and solitary conditions of the CCU. *See id.,* ¶ 7. Pursuant to the settlement agreement, on December 3, 2019, DOC issued a final policy statement reflecting the changes to the CCU to make it less restrictive and isolating. *See id.* at ¶ 8.

Plaintiff explicitly states that his claims relate only to the time period before the Department changed the conditions in the CCU. *See* Def's SMF ¶ 16. But Plaintiff does not recall when the changes on the CCU took place, and he simply refers to the date the Final CCU Policy was issued. *See id.* at ¶ 15. Although the final policy was issued on December 3, 2019, those changes described in the policy began to take effect on the CCU at SCI-Greene on March 12, 2018. *See id.* at ¶ 11. Beginning on March 12, 2018, SCI-Greene instituted a number of significant changes to allow increased out-of-cell time and socialization opportunities for capital case inmates:

- Outdoor exercise increased from two hours five days per week, to two hours seven days per week. And beginning in June of 2018, outdoor exercise changed

from each inmate in a solitary enclosure to one enclosure for all inmates from the same pod, allowing socialization. *See id.* at ¶ 12(a).

- Dayroom activity, which was previously prohibited on the CCU, was offered for at least one hour seven days per week to allow for inmates from the same pod to congregate at tables for game playing, television watching, and other socializing. *See Ex. id.* at ¶ 12(b).

- Law library visitations changed from each inmate sitting in a separate enclosure to allowing up to four inmates from the same pod to congregate together. *See id.* at ¶ 12(c).

- Meal time changed from each inmate being served their meal at their cell and then eating alone in their cells to meals being served outside of cells and inmates allowed to eat together at the dayroom tables. *See id.* at ¶ 12(d).

- Out-of-cell movements became less restrictive so that capital case inmates were no longer required to be strip searched, wear restraints, or be escorted by a two-to-one corrections officer ratio. *See Ex. id.* at ¶ 12(e).

The undisputed record shows that the last act evidencing the continuous practice of extreme isolation occurred on March 11, 2018. Thus, even under the continuous violation doctrine, the two-year statute of limitations expired on March 11, 2020. Plaintiff did not file the instant lawsuit until nearly one year later, on March 3, 2021.

Consequently, the statute of limitations has expired and all claims against Defendant should be dismissed as untimely.

### C.     Defendant Is Entitled to Judgment In His Favor on the Section 1983 Claim Based on a Violation of the Eighth Amendment Under Binding Third Circuit Precedent

In a Section 1983 claim, the defense of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity requires the Court to consider two issues: (1) whether the plaintiff has shown a violation of a federal right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S.

194, 201 (2001). The Court may consider these issues in any order, and the plaintiff's failure to establish either element entitles a defendant to immunity not just from liability but also from the burdens of trial. *Pearson v. Callahan*, 555 U.S. 223, 232-36 (2009).

"[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine [that] it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). To be clearly established, the law does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The dispositive question that the court must ask is "whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*; *see also Davenport v. Borough of Homestead*, 870 F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." *Reichle*, 566 U.S. at 664.

The Supreme Court has emphasized the importance of the qualified immunity defense for public officials, including the requirement that a plaintiff present authority clearly establishing the right at issue. *See Kisela v. Hughes*, 138 S.Ct. 1148, 1152-53 (2018); *District of Columbia v. Wesby*, 138 S.Ct. 577, 589-91 (2018). Both the Supreme Court and this Court have emphasized the importance of the clearly established authority requirement in the context of claims addressing the administration of prisons. *See Taylor v. Barkes*, 135 S.Ct. 2042, 2044-45 (2015) (no authority clearly established "a right to the proper implementation of adequate suicide prevention protocols" in a prison); *Michtavi v. Scism*, 808 F.3d 203, 207 (3d Cir. 2015) (applying

13

*Taylor* and finding no clearly established authority holding that prison officials must treat certain medical conditions).

With respect to the Eighth Amendment claim in the instant matter, the Court's inquiry is made easy because the Third Circuit Court of Appeals has already squarely decided this very issue. The Third Circuit previously held that DOC defendants were entitled to qualified immunity with respect to any claims under the Eighth Amendment arising out of the formerly restrictive conditions of the Capital Case Housing Unit. *See Porter v. Pennsylvania Dep't of Corrections, et al.*, 974 F.3d 431 (3d Cir. 2020).

In *Porter*, the Third Circuit examined a prisoner's as-applied challenge, claiming that DOC defendants violated his rights under the Eighth and Fourteenth Amendments by continuing to confine him on the Capital Case Housing Unit for thirty-three years. 974 F.3d at 436. The plaintiff inmate in *Porter* described the conditions on the CCU as essentially solitary confinement. *Id.* The Third Circuit found that a reasonable jury could find that the prolonged solitary confinement described by the plaintiff violated the Eighth Amendment's prohibitions against cruel and unusual punishment. *Id.* at 447. But, the Third Circuit then held that the defendants were entitled to qualified immunity on the Eighth Amendment claim because a survey of prior case law showed that plaintiff's Eighth Amendment right was not clearly established as of that point. On that basis, the Third Circuit held that DOC defendants were entitled to qualified immunity on the Eighth Amendment claim and affirmed summary judgment.

The Third Circuit reached the same conclusion with respect to an Eighth Amendment claim by a capital case inmate in *Johnson v. Pennsylvania Department of Corrections, et al.*, 846 Fed. Appx. 123, 129 (3d Cir. 2021). *Johnson* involved another challenge by an inmate to having been held in the CCU in essential solitary confinement for over twenty years. *Id.* In *Johnson*,

14

with respect to the Eighth Amendment claim, the Third Circuit confirmed that it was bound by its prior holding in *Porter* that the Eighth Amendment right in this context was not clearly established at the time of Porter and Johnson's confinement on the CCU. *Id.* On that basis, the Third Circuit held that DOC defendants were entitled to qualified immunity for any Eighth Amendment violations and affirmed summary judgment.

In the instant case, Plaintiff was subjected to the same conditions of confinement on the CCU and time period as the plaintiffs in *Porter* and *Johnson.* As established by the Third Circuit in *Porter*, Plaintiff's rights were not clearly established and Defendant is entitled to qualified immunity.

Thus, Defendant is entitled to judgment in his favor on the Eighth Amendment claim.

**D.      Plaintiff Cannot Prevail on a Section 1983 Claim Based on a Violation of the Fourteenth Amendment**

1.      Under *Wilkinson*, the Capital Case Policy is Sufficient to Satisfy Due Process

The Due Process Clause prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To invoke the Due Process Clause, a plaintiff must show a protected liberty interest and that the procedural safeguards were inadequate. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). A plaintiff must establish both elements—the existence of adequate process defeats a due process claim even where there is a protected interest at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

In finding that the Capital Case Policy satisfies due process, this Court can and should follow the Supreme Court's decision in *Wilkinson*, which held that Ohio's policy for housing inmates in a Supermax prison, although involving a liberty interest, nonetheless satisfied due process. The Ohio policy allowed inmates to be placed in a Supermax facility "if an inmate engages in specified conduct, *e.g.*, leads a prison gang," ***or "if the inmate was convicted of***

*certain offenses, e.g., organized crime*." 545 U.S. at 216 (emphasis added). The Ohio policy provided a periodic review of each inmate's status by a three-person panel and an "informal, nonadversary" procedure by which an inmate can hear evidence supporting any relevant facts and present any contrary evidence and appeal any adverse decision. 545 U.S. at 229; *see also id.* at 216-17. Once placed in a Supermax facility, the inmate's status is reviewed annually. 545 U.S. at 217.

In upholding the Ohio policy notwithstanding a liberty interest at stake, the Supreme Court's focus was ensuring that inmates have a right to avoid "erroneous placement." *See Wilkinson*, 545 U.S. at 225 ("We first consider the significance of the inmate's interest in avoiding *erroneous placement* . . . ."); *id.* at 226 ("The second factor addresses the risk of an *erroneous placement* . . . ."). In other words, the process exists in order to make sure that inmates are not placed in a Supermax facility unless they meet the criteria for placement in a Supermax facility. While some criteria may involve factual findings surrounding an incident—like an inmate's involvement in a prison riot—others may require nothing more than a review of an inmate's list of convictions.

In the instant case, the Department's Capital Case Policy meets the standards of *Wilkinson*. Inmates housed in a restricted housing unit, including the CCU, have their status reviewed regularly—at least every 90 days. They have the opportunity to participate in the process and challenge relevant allegations. The policy, where followed, prevents inmates from "erroneous placement" in the restricted housing unit. Under the established standards, the Capital Case Policy satisfies due process. *See Wilkinson*, 545 U.S. at 225; *see also Shoats*, 213 F.3d at 144-47 (upholding administrative custody review procedures notwithstanding that inmates have a liberty interest at stake).

Plaintiff does not directly challenge this. Instead, he contends that there is not sufficiently individualized determination of dangerousness for capital inmates. *See* Compl. ¶ 25. This misses the point. When an inmate is being held in a restricted housing unit solely based on his status as a capital case, the only relevant fact to review to confirm his status is whether he remains a capital case. This is precisely what distinguishes *Shoatz* and *Johnson*. Those cases involved inmates who had obtained relief from their capital sentences, which requires a finding that the inmate "poses a threat to the secure operation of the facility." *See* Department Policy DC-ADM 802 § 1.C.[2] Under the RRL policy, this requires an individualized factual inquiry into the threat posed by the inmate. By contrast, an inmate subject to the Capital Case Policy requires no such individual dangerousness inquiry. Thus, under *Wilkinson*, the process in place is sufficient to satisfy due process even if there is a liberty interest at stake.

2.    An Inmate With An Active Capital Sentence Has No Liberty Interest in Avoiding Placement in Death Row

For an inmate to have a liberty interest, "the right alleged must confer 'freedom from restraint which . . . imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life." *Williams*, 848 F.3d at 559 (quoting *Sandin v. Conner*, 515 U.S. 472 (1995)) (citation omitted and emphasis in original). To determine if a condition places an atypical and significant hardship, the Third Circuit uses a "two-factor inquiry: (1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.* at 560 (citing *Shoats*, 213 F.3d at 144). The Supreme Court has expressly declined to articulate what baseline should be used "to measure what is atypical and significant in any particular prison system." *Wilkinson*, 545 U.S. at

---

[2]      Available at: http://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/802%20Administrative%20Custody%20Procedures.pdf.

223. In holding that death row inmates have no liberty interest in avoiding death row, the Fourth

Circuit reasoned that where "state law mandates the confinement conditions to be imposed on

offenders convicted of a certain crime and receiving a certain sentence, those confinement

conditions are, by definition, the 'ordinary incidents of prison life' for such offenders." *Prieto v.*

*Clarke*, 780 F.3d 245, 254 (4th Cir. 2015); *see also Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th

Cir. 2012) (an inmate's expected conditions "will differ depending on a particular inmate's

conviction and the nature of nonpunitive confinement routinely imposed on inmates serving

comparable sentences.").

There is no question that, after *Williams*, in the Third Circuit an inmate has "a due

process liberty interest in avoiding . . . confinement on death row ***after their death sentences***

***[have] been vacated***." 848 F.3d at 570 (emphasis added). The Third Circuit explicitly has not

extended this liberty interest to inmates confined pursuant to death sentences that have not been

vacated. *See Porter*, 974 F.3d at 438 n.2. ("In *Williams*, we did not decide whether inmates who

have been granted resentencing hearings and vacatur have a procedural due process interest in

avoiding continued solitary confinement.") Instead, holding an inmate with a valid death

sentence under the prior conditions of the CCU is "not a significant or atypical hardship for

them," and is "expressly within the 'expected perimeters of the sentence imposed.'" *See*

*Williams*, 848 F.3d at 569. (quoting *Sandin*, 515 U.S. at 485). In analyzing whether the plaintiffs'

situations rose above the level in *Sandin* (where there was no liberty interest in avoiding

disciplinary custody for 30 days), the Third Circuit tellingly did not start counting the time until

"after the initial justification for subjecting them to such extreme deprivation (their death

sentences) ceased to exist." *Id.* at 561 (emphasis added). In both expressed and implied ways, the

Third Circuit has made clear that holding inmates with an active death sentence in the prior CCU does not invoke a protected liberty interest.

In this case, Plaintiff's death sentence has never been vacated and remains active. *See* Def's SMF ¶ 2. As such, the ordinary incidents of prison life for Plaintiff were reflected by the conditions of the CCU, and not by the regulations meant for the general prison population. Applying the reasoning of *Williams* and *Sandin*, Plaintiff at no time had a liberty interest in avoiding continued confinement in the CCU.

3.     There Can Be No Substantive Due Process Claim Under Binding Third Circuit Precedent

It is unclear if Plaintiff's 14th Amendment claim makes a claim for procedural or substantive due process. To the extent that Plaintiff brings a substantive due process claim, this too must fail.

The notion of substantive due process is fundamentally a "protection against arbitrary action." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Because "only the most egregious official conduct can be said to be arbitrary in the constitutional sense," due process protects against "executive abuse of power as that which shocks the conscience." *Id.* at 846 (internal quotation marks and citation omitted). Additionally, where the Constitution "provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

In *Porter*, the Third Circuit affirmed summary judgment on the 14th Amendment claim after finding that the substantive due process claim challenged the same conduct as the Eighth

Amendment claim, namely, his prolonged solitary confinement and averred no distinct facts. *See* 974 F.3d at 448.

Here, as in *Porter*, any potential substantive due process claim is duplicative of the 8th Amendment claim. Plaintiff challenges his prolonged confinement under the prior conditions of the CCU. He offers no distinct facts to support a substantive due process claim separate from facts supporting his  8th Amendment claim. Thus Plaintiff fails to state a distinct substantive due process claim.

4.      Defendant is Entitled to Qualified Immunity for Any Alleged Violations
of the Fourteenth Amendment

As a result of the *Williams* and *Porter* decisions, it is clearly established hat holding capital prisoners who receive some form of sentencing relief violates the 14th Amendment. But here, Plaintiff has received no such relief. His claim of a violation of his due process rights under the Fourteenth Amendment is only that he was not provided with regular reviews to support his continued confinement in the CCU. But, that is not what *Williams* requires for prisoners who maintain active death-sentences with no pending sentencing or conviction relief.

Because *Williams* and *Porter* explicitly did not extend its due processing holding to include inmates with an active capital sentence, those cases implicitly grant Defendants qualified immunity as to the Fourth Amendment due process claims. Simply, if the liberty interest was not established prior to *Williams*, and *Williams* did not address the particular liberty interest at issue, there are no grounds to conclude that Plaintiff's liberty interest was clearly established. Similarly, because the liberty interest was not clearly established, Defendants had no way to determine whether the Capital Case Policy adequately protects that liberty interest for inmates with a valid death sentence. This case requires a leap that it appears no appellate court has made with respect to due process. Defendants are thus entitled to qualified immunity.

20

**E.      Defendant Is Entitled To Judgment In His Favor On The ADA Claim Because There is No Evidence of Deliberate Indifference**

To successfully state a claim under Title II of the ADA, a person "must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity (4) by reason of his disability." *Haberle v. Troxell*, 885 F.3d 170, 178 (2018) (quoting *Bowers v. Nat'l Collegiate Athletic A*ss'n, 475 F.3d 524, 553 n.32 (3d Cir. 2007)). As a general matter, it is has been established that Title II of the ADA applies to state prisons and departments of corrections. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-212 (1998).

Even though the ADA generally applies in the prison context, claims for compensatory damages under the ADA are not available absent proof of "intentional discrimination". *Haberle*, 885 F.3d at 181 (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.* (hereafter, "Durrell"), 729 F.3d 248, 261 (3d Cir. 2013)). To prove intentional discrimination, an ADA claimant must prove at least deliberate indifference. *Durrell*, 729 F.3d at 263. To plead deliberate indifference, a claimant must allege "(1) knowledge that a federally protected right is substantially likely to be violated … and (2) failure to act despite that knowledge." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 292 (3d Cir. 2019) (citing *Durrell*, 729 F.3d at 265).

Here, Plaintiff alleges that he has disability in the form of a severe mental illness or intellectual disability. As a threshold matter, the record does not establish that Plaintiff has a severe mental illness or intellectual disability. Plaintiff's history of mental health treatment shows that he had one threat of suicide accompanying violent outbursts towards his family when

21

he was fourteen. *See* Def's SMF ¶ 40. He received treatment and was diagnosed with anger management issues and depression, but was evaluated with no intellectual disability or severe mental illness. *See id.*, ¶ 41-42. Plaintiff also received voluntary therapy treatment for several months during this time period. *See id.*, ¶ 43-45. After Plaintiff was committed to the Department, within the first few years of his confinement he attempted suicide once. *See id.*, ¶ 30. Plaintiff received mental health treatment, during which he told doctors that he had faked the suicide attempt to get off the block and assured them that he was fine. *See id.*, ¶ 31-32. During the remainder of his time in the old CCU, Plaintiff never actively sought mental health treatment, he always told the mental health staff that he felt fine and never told any staff member that he was experiencing mental health issues. *See id.*, ¶ 33-39. Plaintiff has never been diagnosed with a serious mental illness by any professional with the Department's mental health staff. *See id.*, ¶ 29.

Based on these facts, it is clear that the Department had no knowledge of any mental health or intellectual disability. Even Plaintiff's history prior to arriving in DOC custody does not rise to the level of a serious mental illness, but even if it did, there is no evidence that the Department had knowledge of those facts. The record shows that the Department did not exhibit deliberate indifference towards Plaintiff's disability.

Thus, Defendant is entitled to judgment on the pleading on the ADA claims.

## V.   CONCLUSION

For the foregoing reasons, judgment in this matter should be entered in favor of Commonwealth Defendants as a matter of law, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Dated: January 31, 2022                    Respectfully submitted,

JOSH SHAPIRO
Attorney General

COMMONWEALTH OF PENNSYLVANIA          BY: /s/ Kathy A. Le
OFFICE OF ATTORNEY GENERAL            KATHY A. LE (Pa. No. 315677)
The Phoenix Building                  Deputy Attorney General
1600 Arch St., 3rd Floor
Philadelphia, PA 19103
Telephone:  (215) 560-2141            KAREN M. ROMANO
Fax:  (717) 772-4526                  Chief Deputy Attorney General
kle@attorneygeneral.gov               Civil Litigation Section

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROY LEE WILLIAMS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, | : | |
| | : | |
| Defendant. | : | NO. 21-1248 |

**CERTIFICATE OF SERVICE**

I, Kathy Le, hereby certify that, on January 31, 2022, Defendant's Motion for Summary Judgment was filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing System. Additionally, I caused a true and correct copy of the foregoing Motion to be served on the following via United States first class mail:

Smart Communications/PA DOC
Roy Lee Williams/CF-4784
SCI-Phoenix
PO Box 33028
St Petersburg, Florida 33733

/s/ Kathy A. Le
Kathy A. Le