# EXHIBIT F

## PHILADELPHIA PSYCHIATRIC CENTER

## DISCHARGE SUMMARY

Patient's Name: Williams, Roy   Age: 14   Sex: Male   Case Number: 00-48-58

Address: 1606 E. Howell St., Phila., PA 19149   Status: Involuntary-304

Race: Black   Religion: Unknown   Occupation: ____

Referring Physician: HS#7A   Resident Physician: Dr. P.J. Hartmann

Date of Admission: 4/19/79   Date of Discharge: 6/21/79

**PRESENTING PROBLEM ON ADMISSION AND HISTORY:** Roy Williams is a 14 year old male with a caucasian mother and black father who was referred on 4/19/79 from 7A on a 304C commitment for a 10 day psychiatric evaluation. The patient had been a chronic behavior problem for his mother, who separated from his father when Roy was 5 for the last several years. However, patient had difficulty in a boarding school which he was attending around Christmas of 1978 and refused to return to this school or attend school in his neighborhood. Between January and the time of admission Roy had secluded himself in the house, refusing to go out and socialize and become increasingly violent and abusive towards his mother and sister. Mrs. Williams, in January of 1979, requested placement by DPW of Roy because she felt unable to handle his temper and abuse. In the months prior to admisssion the patient had threatened his mother with a knife, broken television set and pieces of furniture, punched holes in walls, stabbed the bed in the house with a knife, and acted sadistically toward the family dog. Roy assaulted his sister in March of 79, 3 times, once requiring her to go to the hospital.

**MENTAL STATUS ON ADMISSION:** Revealed a short, somewhat obese black male with poor eye contact during the interview. His motor behavior was somewhat slowed and his affect sad and anxious. There was no evidence of formal thought disorder. When questioned about many of the specifics of his situation with his mother, Roy would simply respond "I don't know" or "I can't remember". Orientation was entirely normal.

**PHYSICAL EXAMINATION:** Within normal limits.

**LABORATORY STUDIES:** Including CBC with differential, chem 24, T4, T3, urinalysis, VDRL, EKG, and chest X-ray were all within normal limits for his age.

This information has been disclosed to you from records whose confidentiality is protected by State Law. State regulations prohibit you from making any further disclosure of this information without the prior written consent of the person to whom it pertains.

**COURSE IN THE HOSPITAL:** During the initial 10 day evaluation period, Roy had psychiatric evaluation, psychological evaluation through psychological testing and assessment by social service. Patient was initially admitted to a closed area of the hospital and for the first 2 days was taken off the floor only when accompanied by a staff member. He conformed fairly well to the hospital routine and was gradually allowed off the floor with a group of patients and then transferred onto a open ward. He appeared to be able to control aggressive impulses fairly well although occasionally facial argument and once threw a luncheon tray on the floor. It was quite difficult to tell what provocation there was when Roy would lose his temper as he seemed exceedingly sensitive to any slight or suggestion that he do something he did not wish to do.

Williams, Roy                                -2-                              00-48-58

After 10 days we returned to court and recommended that he be return to the Philadelphia Psychiatric Center under a Section 305 for further inpatient psychotherapy on a trioption basis with the view that if he derived some benefit from the brief psychotherapy he could be placed in an appropriate group home. Roy was quite willing to assent to this and he, as well as his mother, commented that he had felt happier in the hospital then he had in many months. Initially an attempt was made to meet with Roy, his sister and his mother together. The situation however was quite impossible as Roy could hardly contain his anger at seeing his sister and his sister was so intimidated by Roy that she was unable to speak freely. Although Roy, throughhout his hospitalization, was not a major behavior problem, several times he showed extremely poor impulse control and tolerance of frustration. Events such as staff refusing to do his laundry when he wished twice sent him into a rage where he once banged a water fountain and would slam doors. At no time was he physically violent towards another patient although he was frequently sadistic and teasing sicker patients. Roy showed a marked resistence to communicating his feelings in individual or group therapy. This was in spite of considerable prodding by all members of the adolescent team and his adolescent peers as well. Patient was not treated with any medications during the hospitalization.

Psychological examination on 4/19/79 revealed Full Scale IQ of 85, placing him in the dull/normal range of intelligence. It was felt that he had considerable difficulty in thinking in catagories and in synthetic thinking, tackling more abstract forms of thinking. Assessment of his emotional functioning by projective tests indicated, as his clinical condition did, that his most striking problem was the control of angry feelings. It was felt that when he becomes angry he tends to over generalize and lash out indiscriminately at what is going on around him. He has little ability to reflect on the causes of his angry feelings. Second major area of difficulty was in the area of masculine identification in which he seemed to anticipate failure. It was felt that he tended to rely on a facade of masculinity but underneath was someone who was quite frightened, dependent and tending to be rather passive. The third major problem was felt to be a significant depression which was revealed in several of his TAT stories in which he offered suicide as a solution to problems.

It was felt that although Roy was reluctant to bring up many personal issues in group and individual therapy, that he did listen closely to the problems of the other adolescents and seemed to derive some significant benefit vicariously in this process. His behavior was such in the hospital that it was felt that in a structured group home he would certainly be able to manage fairly successfully. The patient returned to court on the 19th and Judge Dandriage of the Family Court terminated his 305 commitment 2 days after that date, forcing DPW to move quickly on his placement. On June 21st, he was discharged in the custody of his mother and DPW social worker and taken to the Youth Services Home where he was to be evaluated for placement.

TREATMENT:

The patient was treated with individual, group and briefly family therapy. Patient was not treated with psychotropic medications.

DIAGNOSIS:     (PROVISIONAL)                     Adjustment Reaction of Adolescence.

               (Final)                           Adjustment Reaction of Adolescence.

PROGNOSIS:

This information has been disclosed to you from records whose confidentiality is protected by State Law. State regulations prohibit you from making any further disclosure of this information without the prior written consent of the person to whom it pertains.

Prognosis is considered fair if the patient can be placed in a supportive yet fairly highly structured group home in which the patient can develop appropriate routes of expressing feelings, find appropriate male figures on which to build a masculine identification.

Williams, Roy

DISPOSITION:

Home.

Patient was discharged to the Youth Services

Dr. P.J. Hartmann
Resident Physician

*[signature]*
Gertrude Hight, M.D.
Unit Director

ew/7/2/79
cc. Admissions

This information has been disclosed to you from records whose confidentiality is protected by State Law. State regulations prohibit you from making any further disclosure of this information without the prior written consent of the person to whom it pertains.