# EXHIBIT G

**PHILADELPHIA PSYCHIATRIC CENTER**

## PSYCHOLOGICAL EXAMINATION—(Continued)

Patient's Name: Williams, Roy    File No. / Chart No. 00-48-58    Examiner: X. Byrne, Psy.D.    Page 2

### INTELLECTUAL FUNCTIONING:

On the WISC-R Roy obtains a Verbal I.Q. of 84, a Performance I.Q. of 90, yielding a Full-Scale I.Q. of 85. This places his current intellectual functioning in the Dull-Normal Range of intelligence. There is significant unevenness and scatter both within and between individual subtests.

In the Verbal area Roy has striking difficulty on a task which requires that he compare the basic similarities between a variety of items. This suggests that he has difficulty in thinking in categories, in synthetic thinking, and in tackling more abstract forms of thinking. Secondly, Roy has difficulty on tests which assess his social judgment, i.e., his intellectual awareness of the appropriate behavior called for in a variety of situations. This suggests that he is not as "tuned in" to social conventions and the appropriate anticipated behavior as would be expected.

Somewhat surprisingly, he shows reasonably strong skills at concentration, and indicates that under certain conditions he is quite able to marshall his intellectual resources toward problem solving activities.

In general, it may be said that Roy is not a youngster who feels comfortable in verbal interactions, and he is a "doer" rather than a "talker".

In the Performance area Roy's work is much more even, and at a slightly higher level. This is true in all of the performance tasks with the exception of a task which requires the assembly of puzzle pieces. Here he approached this in quite a cavalier, almost careless fashion, and on the first and easiest of the tasks he made quite careless errors, costing him points on the subtest. He approached it using only one hand and did not try overtly to plan in advance.

### EMOTIONAL FUNCTIONING:

The most striking problem this youngster faces is the control of his angry feelings. Roy is a youngster who is intensely resentful and angry, and these feelings are easily stirred up by events in his environment. When he becomes angry Roy tends to over-generalize, and tends to lash out indiscriminately at what is going on around him. He correctly views certain events, but then draws unwarranted conclusions from the bits of information he accurately views. To his credit, Roy tries to inhibit direct motoric expression of anger, and in fact, if he

PHILADELPHIA PSYCHIATRIC CENTER

## PSYCHOLOGICAL EXAMINATION—(Continued)

Patient's Name: Williams, Roy    File No._____   Chart No. 00-48-58   Ward_____   Examiner K. Byrne, Psy.D.   Page 3

EMOTIONAL FUNCTIONING (Continued):

is in a situation over an extended period of time it is more likely that he will be successful in doing so. In the beginning of things however, he tends to be more impulsive. Roy is someone who is also likely to be quite easily irritable. His response to Rorschach card II provides a good insight into how he sees relationships with others: "It looks like two bears fighting."

A second major area of difficulty for Roy is in the task of masculine identification. There are many signs that Roy is striving toward being manly, but unfortunately he seems to anticipate failure in this area. He gives an intimate look at his ego ideal in his comments about a drawn person: "He plays for the 76/ers basketball team and he's the best one on the team. They just won the championship and he's getting congratulated and everybody's shaking his hand." This is in striking contrast to another view Roy provides of his future, in responding to a TAT card which shows a young man standing with a motherly looking figure: "It's a guy and his mother. He wants to leave the house but mother doesn't want him to. Eventually he finds an apartment and meets a lady, but now he's coming home and living with mother again. Things didn't work out with the girl, so he's disgusted and mad as he goes back home. He feels like he is being treated like a child and he is a man. He's hoping mother will take him back and she does." This story suggests that despite his strivings Roy is having difficulty psychologically beginning to separate from his mother, and a lot of his anger seems to be deriving from this situation. It is particularly difficult for him because at a conscious level he seems to see his mother as somebody who is quite reasonable, who has his best interest at heart, and who is open to logical discussions. This makes it even more frustrating because he finds it difficult to explain his anger towards her. He also can be anticipated to rely on a facade of masculinity, but underneath this Roy is somebody who is quite frightened, dependent, and tending to be rather passive.

A third problem for this youngster is a significant masked depression. While Roy is unlikely to offer verbal complaints of a depression, he is significantly sad, unhappy, and forlorn. This is likely to be presented by him as complaints of boredom or restlessness. In several of his TAT storieshhe offers suicide as solutions to problems, and some self-destructive behavior should not be ruled out with this youngster.

## PSYCHIATRIC EVALUATION
### May 10, 1979

Roy Williams
1606 E. Howell St.
Phila., Pa. 19149
D.O.B. 12/26/64

Roy Williams is a 14-year-old adolescent of mixed racial heritage who was admitted to Philadelphia Psychiatric Center on April 19, 1979 under Section 304C of the Mental Health Procedures Act for psychiatric evaluation and recommendations.

According to the history furnished, there have been difficulties in Roy's family since January 18, 1979 when Mrs. Williams, Roy's mother, came to the Department of Public Welfare to request placement for Roy. She stated she was unable to cope with his behavior, which she described as having a low frustration point, frequent temper tantrums in which he broke and threw things and of being generally destructive, as well as assaultive toward her and his 12½-year-old sister. Roy's father has been out of the home since Roy was 5½-years-old and Roy has lived with his mother since then except for a period in 1978 when he was a resident at the Hershey School. Roy left the school at the Christmas vacation of 1979 because he was not able to get along with peers at the school and the school was not willing, according to the record, to transfer him to another area of the facility.

The Department of Public Welfare petitioned the court to have Roy Williams committed for inpatient psychiatric treatment under Section 304C of the Mental Health Procedures Act.

## MENTAL STATUS ON ADMISSION:

Roy presented as a slightly obese, stocky, well built black youngster who appeared his stated age. He sat quietly with fair eye contact and with a sad facial expression. He was cooperative and friendly. Speech was spontaneous and goal-directed, with normal volume and flow. Affect was sad, slightly tense and somewhat bland when talking about his fights with his sister and mother and his own suicide and homicide threats. Mood appeared to be depressed. There was no evidence of a break with reality, hallucinations, delusions or ideas of reference. He denied suicidal ideation. He was oriented in three spheres. Memory, recent and past, appeared to be intact. Intelligence was estimated as within normal limits. Insight appeared to be impaired and judgment was considered only fair.

## COURSE IN THE HOSPITAL:

The patient was admitted to a closed area of the hospital and for the first two days was taken off the floor only when accompanied by a staff member. He conformed to hospital routine and on April 21 was given privileges wherein he went off the floor with a group of patients supervised by one staff member. He was given full privileges within the hospital grounds on April 24 and was transferred to an open ward on May 3. In general, he was able to control any aggressive impulses quite well, although on occasion he showed facial anger and

Roy Williams                                                                Page -2-

once during an argument with another patient threw a luncheon tray on the floor. He apologized for this incident and it was not repeated. It was difficult to tell what provocation there was in this incident.

During hospitalization an awake electroencephalogram was read as within normal limits; skull x-rays were within normal limits; chest x-ray was within normal limits as was the electrocardiogram. Laboratory studies were also within normal limits with the exception of one enzyme which was minimally and probably not significantly above normal limits. Psychological testing was also performed.

Roy impresses as a youngster who currently is moderately depressed and trying to work through several areas of conflict; dependency needs versus a need to achieve independence from his mother; possible perceived rejection by his father; identity difficulties as regard to race; and a rather low self-esteem which he tries to deny to himself. There appears to be much anger and resentment because of his felt dependency on his mother. He has difficulty with impulse control and control of his aggressive impulses. His strengths are his normal intelligence and absence of any psychotic process at present. His defenses at present appear to be primarily denial and projection with difficulty in assuming responsibility for his own actions and impulsive acting-out when frustrated in an aggressive way.

It is noteworthy that most of, if not all, Roy's aggressive behavior has been in the home rather than on the streets and in school.

RECOMMENDATIONS:

In my judgment the tensions in Roy's own home at present would continue to provoke assaultive acting-out behavior on Roy's part and perhaps some self-destructive behavior. I believe that Roy could benefit greatly by brief intensive in-patient psychotherapy to help him work through some of his inner conflicts. It is my recommendation that he be returned to Philadelphia Psychiatric Center under Section 305 for further in-patient psychotherapy on a tri-option basis, with the view that if he derives some benefit from this brief psychotherapy he would then be placed in an appropriate group home until and if his relations with his mother and sister improve to the point that he can return to his mother's home.

Gertrude Hight, M.D.
Director, Adolescent Unit
Philadelphia Psychiatric Center

Paul Hartmann, M.D.
Resident Physician

GH/jmc